[No. 392.   January Term, 1891.]

# PERFECTO ARMIJO, EXECUTOR, ETC., ET AL., APPELLANTS, v. LORENZO ABEYTIA ET AL., APPELLEES.

PRACTICE ON APPEAL—MOTION TO DISMISS AND FOR AFFIRMANCE OF JUDGMENT, UNDER SECTION 2189, COMPILED LAWS, AND RULE 23, SUPREME COURT.—Where, on appeal, the appellant files a transcript of the record, but not, as required by section 2189, Compiled Laws, "at least ten days before the first day of the term to which the appeal is returnable," a motion to dismiss the appeal and for affirmance of judgment, on that ground, not made until after such filing, will be denied.

2. Nor will such motion be sustained on the ground of appellant's failure to deliver to the attorney of appellee, "at least ten days before the first day of the term, two printed copies of the transcript of record," as required by rule 23 of the supreme court, where it appears from the affidavit of appellant's counsel that appellant is a poor man, and was not able to obtain the necessary money to procure a transcript of the record until after the time for filing had expired, and the record shows that the transcript was filed five days before the first day of the term.   In view of these facts, and of section 2189, supra, which further provides that "the court shall affirm the judgment unless good cause shall be shown to the contrary," it will be presumed that diligent effort was made by appellant to comply with the rule, which the court holds to be "good cause shown" within the meaning of the statute.

3. CONTRACT UNDER SEAL—COVENANT—SUBSTITUTION OF NEW PAROL AGREEMENT—ACCORD AND SATISFACTION.—In an action of covenant on a contract under seal for the value of certain sheep, rented by plaintiffs' testator to defendants, for a time determinable at the pleasure of either, not returned, where the plea was, among others, a new parol agreement in satisfaction of the original contract sued on, to which plaintiffs demurred on the ground of no consideration shown, which was sustained,—Held: The demurrer was properly sustained.   In order to make a good satisfaction for a contract to be set aside, the new contract attempted to be substituted must contain an executed consideration of value to the obligee.

4. ID.—PLEAS—ATTACHMENT—REPLEVIN AND DISMISSAL BY PLAINTIFF —SALE—INEVITABLE ACCIDENT.—In such action, where the defendants pleaded further that the sheep in question were seized by the sheriff under a writ of attachment against one of the defendants; that

plaintiffs replevied them, but afterward dismissed their suit, and allowed them to be sold under the attachment; and that such sale constituted "inevitable accident,"—Held, on demurrer: These facts constitute no defense to plaintiffs suit for the value of the sheep not returned. The loss of the property by sale under the attachment was not accident within the terms of the contract.

5. ID.—LIABILITY FOR RENT AFTER BREACH—MEASURE OF DAMAGES.— In such case, where the contract sued on provides that "the said property is to be considered the same as money received," the right of action arises immediately upon a breach, and the measure of damages is the value of the property at that time with legal interest for the use of the money. Plaintiff can not recover rent for the time after such breach.

APPEAL, from a judgment in favor of plaintiffs, from the Second Judicial District Court, Bernalillo County. Judgment affirmed.

The facts are stated in the opinion of the court.

WILLIAM B. CHILDERS for appellants.

To establish a parol contract in discharge of a. previous contract under seal, requires no other or different evidence than would establish any contract not within the statute of frauds. Canal Co. v. Ray, 101 U. S. 527; Dearborn v. Cross, 7 Cowen (N.Y.), 48; LaFevre v. LaFevre, 4 S. & R. 241; Fleming v. Gilbert,. 3 Johnson, 527.

The court erred in sustaining the demurrer to defendants' second additional plea. Dearborn . v. Cross, 7 Cowen, 48; Lattimore v. Horsen, 14 Johns. 330; Cooke v. Murphy, 70 Ill. 97; Reed v. McGrew, 5 Ohio, 376; McGrann v. North & R. R. Co., 26 Pa. St. 82; Lowell v. Roder, 2 Grant (Pa.) Cases, 426.

This is rather an abandonment or rescission than modification. Green v. Wells, 2 Cal. 584.

The mutual agreements furnished sufficient consideration. Low v. Forbes, 18 Ill. 568.

The measure of damages is to be applied to the conditions at the time of the breach, not at the date of bringing the suit. Fosdick v. Green, 27 Ohio St. 284; Wintermute v. Cooke, 73 N. Y. 107; Angier v. Taunton Paper Mfg. Co., 1 Gray, 621; note to Baker v. Wheeler, 24 Am. Dec. 71; 2 Sedg. on Measure of Damages, 151; Id. 392, and cases cited.

NEILL B. FIELD for appellees.

The plea of the substitution of an unexecuted parol agreement in discharge of a contract under seal is bad, and evidence in support of it inadmissible. Sorrell v. Craig, 8 Ala. 566; Cabe v. Jamison, 10 Ired. 193; 1 Chitty Pl. 488; 1 East, 630; 3 Term Rep. 596.

Such plea amounts to a plea of accord without satisfaction. 2 Par. Con., and cases cited.

The measure of damages for the value of the sheep at $1.50 per head with rent to the date of the commencement of the action was right. Robison v. Varnell, 16 Tex. 390; Snydam v. Jenkins, 3 Sandf. 614.

The injured party was entitled to be put in the same condition, as far as money could do it, in which he would have been if the contract had been fulfilled, or the tort not committed, or the loss had been instantly repaired when compensation was due. 1 Sutherland on Damages, 174.

There was no error to the prejudice of defendants, but if the court shall think otherwise it may modify the judgment. Section 2190, Compiled Laws, 1884; Hopkins v. Orr, 124 U. S.

SEEDS, J.—The abstract of the record in this case was filed in the supreme court upon January —, 1889, being only —— days before the first day of the January term of that year. The appellants failed to deliver to the attorney of the appellees two copies of the tran-

script ten days before the first day of the term, as required by rule 23 of the rules of the supreme court. The first day of the 1889 term fell upon January 7. Upon the fifth day of January, 1889, the appellees gave notice to the appellants that they would upon January 8, being the second day of the term, move the court to strike the case from the docket, and affirm the judgment of the district court. They filed their affidavit and motion, in accordance with that notice, upon January 8, 1889. The motion of the appellees was predicated upon two grounds, viz.: (1) "Because you did not, at least ten days before the first day of the January term, 1889, of said supreme court, file in the office of the clerk of said court a complete transcript of the record and proceedings in said cause." (2) "Because you did not, at least ten days before the first day of the said term of said supreme court, deliver to Neill B. Field, the attorney for the appellees, two printed copies of the transcript of the record in said cause." Counsel for appellees strenuously contends for the rights of his clients under this motion; and as the questions therein raised, if now decided, may definitely settle a matter of procedure, the motion will be considered with some thoroughness.

The two grounds of the motion involve the construction of a section of the Compiled Laws of New Mexico of 1884 (section 2189), and also of a rule of the supreme court (number 23).

Section 2189 provides substantially as follows: The appellant shall file in the supreme court, at least ten days before the first day of such court to which the appeal is returnable, a perfect transcript of the record and proceedings in the case. If he fails to do so, the appellee may produce in court such transcript, and, if it appears thereby that an appeal has been allowed in the cause, the court shall affirm the judgment, unless good cause shall be

MOTION for affirmance of judgment under sec. 2189, Comp. Laws.

shown to the contrary. The facts show that the record was not filed as herein contemplated, but it was filed some ——— days before the first day of the term, and before the appellee filed his motion to affirm the judgment. Is the motion upon this ground well taken?

1. The object of the statute is, undoubtedly, to assure promptness in obtaining the decision of the appellate court, in order that the successful litigant in the nisi prius court, if rightfully entitled to his judgment or decree, may not, by negligence or willful dereliction on the part of the appellant, be deprived of his rights. However, it is evident that the enforcement of the appellee's rights under this statute, in the first instance, depends upon his own action. The appellant is prima facie negligent, and loses his right to prosecute his appeal, when less than ten days remain before the first day of the term, and the transcript is not filed. Then is the time for the appellee to move; for immediately, in contemplation of law, his rights are infringed. He then has a duty to perform,—a duty just as imperative as the previous duty of the appellant,—and that is to produce in court the transcript, and move to affirm the judgment. If he fails to do so, but allows the appellant to file the transcript, the presumption certainly arises that, as he has not moved before, he does not consider his rights interfered with. The appellee contends that it would be a useless and vain thing for him, after the appellant had filed the transcript, to also file a transcript, and then move to affirm the judgment; that the appellant's is sufficient. True it would be useless and vain, but the error of the learned counsel is in assuming that, immediately upon the closing of the ten days without appellant's filing the record, that he has an absolute right to have the judgment affirmed. If he fails to act with promptness, he may in effect extend the day of grace to his adversary, who may take advantage of it, as in this case. While such statutes should not be so interpreted as to render

them easy of evasion, and of no practical value, at the
same time they should have some flexibleness, so that
they may not be oppressive.   This holding is not with-
out the support of respectable authorities.   Rule 9 of
the supreme court of the United States is essentially the
same as the statute under consideration; and that court
has held that it does not consider the rule as applying
where the transcript has been filed by the appellant
before the motion to dismiss.   7 Cranch, 99; 10 Pet.
24; 3 Wall. 103; Evans v. Bank, 134 U. S. 330.

2.  The second ground of the appellee's motion is
based upon a portion of rule 23 of the rules of the

MOTION for dis-   supreme court, which reads as follows:
missal and af-    And he [the appellant] shall also deliver
firmance under
rule 23.          to the attorney of the adverse party, at
least ten days before the first day of the term, two
printed copies of said transcript of record.   In case the
appellant or plaintiff in error neglects to furnish to the
adverse party the said number of copies of the tran-
script of record, that latter shall be entitled to move,
on affidavit and twenty-four hours' notice of motion, on
the second day of the term, that the cause be stricken
from the docket, and the judgment appealed from be
affirmed, or the appeal dismissed.''   It will be noticed
that, as to this rule, the day upon which the motion can
be filed is fixed,—the second; that it is based upon affi-
davit and notice of the motion to the appellant twenty-
four hours before its being filed.   While the rule con-
templates that these copies should be delivered ten
days before the first day, yet it would seem the delay
would not be fatal, if delivered before the filing of the
motion; for the rule says, ''in case the appellant neg-
lects,''etc., not ''neglects to furnish ten days before,'' etc.
But in this case the appellants have neglected to furnish
the copies in accordance with the rule, and the appel-
lees have in every particular complied with the require-
ments as to filing their motion for dismissal.   While

there is no direct adjudication in the reported cases of the territory upon this rule, yet there are negative expressions in a number of cases which plainly indicate the opinion of the supreme court upon it. In Evans v. Baggs, 4 N. M. (Gil.) 67, the court says: "When it is desired to strike out records under this rule, all the requirements of the rule must be complied with. The motion must be filed upon the second day of the term, supported by affidavit; and notice must be served upon appellant or his counsel, twenty-four hours previous to the filing of the motion, that it will be filed, and upon what ground it is based." See, also, Mora v. Schick, 4 N. M. (Gil.) 301.

The motion under consideration, as to its second ground, fully complied with the rule as interpreted by this court in the above citation. It would seem, therefore, that the motion as to the second ground was well taken, and should be sustained. However, there is another phase of this motion which requires attention. The statute (section 2189) says, among other things, that "the court shall affirm the judgment unless good cause shall be shown to the contrary." The appellant's counsel filed an affidavit in this court alleging that his client was a poor man, and was not able to obtain the money with which to procure a transcript of record of the case until after the time for filing it in the clerk's office had expired. Was this such good cause shown as to take the case out of the statutes? It is not the duty of the attorney to furnish the "sinews of war" for his client. The fact that a man is poor is not, as a general rule, a reason why he should be shown any more leniency than a prosperous person. At the same time, where a man is poor, and makes a laudable effort to protect his rights, and is temporarily embarrassed, he should not be denied the merciful provisions of the law, when by granting it the adversary is in no worse position than he would have been if the unfortunate

litigant had been able to do certain acts a few days
earlier. It is true that the affiant has not said that his
client used due diligence, commensurate with his cir-
cumstances, to procure the needed money; but, as the
record shows that the transcript was filed five days
before the first of the term, the presumption here
would certainly be that he had made diligent effort.
Of course, as his transcript was in time anyway, under
the construction heretofore given to the statute, the
question is only material upon the second ground.
Are we justified in making any exceptions to rule 23?
It is conceivable that, if we are not, that the righteous-
ness of the statute in its desire to save the rights of
those who have failed to file the transcript, but could
not do so, in time, though for "a good cause," would
be nullified. Suppose a transcript was procured, but
before it was filed, through no fault whatever of the
appellant, it was burned or stolen; that with all possi-
ble celerity it would be impossible to obtain a new one
and file it before the third day of the term. Now,
clearly, this would be "a good cause," under the stat-
ute, to interfere in behalf of the appellant; but, if the
court has no power to relax the rigor of rule 23, all the
appellee would have to do would be to file his notice,
affidavit, and motion on the second day, and abso-
lutely deprive the court of its undoubted right under
the statute. It does not seem to us that the rule con-
templates any such suicidal procedure; but, rather,
that while rule 23 is to be sustained in its rigor in all
cases where the transcript is in existence in time for a
proper filing, yet when the failure to file copies with
the adverse attorney in accordance with the rule is
because of a failure to file the transcript with the clerk
in time, and for that failure there is "a good cause"
under the statute, then the same cause will apply to the
failure under the rule, and justify this court in refusing
to enforce its provisions. It will be borne in mind,

however, that we lay down no general rule by which rule 23 can be dispensed with. Each case depends solely upon its own peculiar facts. The affidavit filed in this case, "showing a good cause to the contrary" why the penalties of the statute should not be enforced, and it being evident that the failure in this particular case, under rule 23, is dependent upon the failure under the statute, we believe that the motion of the appellee should be overruled.

This is a case in covenant, upon a contract under seal. The declaration substantially alleges that the plaintiffs' testator rented to the defend-

CONTRACT under
seal: covenant:
substitution of
new parol
agreement.

ants four thousand and eighty-seven ewes for a time determinable at the pleasure of either party; that the defendants were to pay a rental of twenty-five cents per ewe each year, in advance, upon the twenty-fifth of August; that if, by reason of accident, the defendants could not redeliver any of said ewes, then they were to be paid for at the rate of $1.25 each, but, if they were disposed of by said defendants "in any other manner," then they were to be paid for at the rate of $1.50 each; that the rental was not paid, and, though often requested, the defendants refused to deliver said ewes. To this declaration the defendants filed sundry pleas, alleging (1) a partial delivery; (2) that there was a new agreement between the plaintiffs and one of these defendants which was a "complete satisfaction of the contract" sued upon; and (3) that the ewes were taken from the defendant Abeytia's possession by the sheriff of Santa Fe county on a writ of attachment upon the suit of one Barela against the said defendant Abeytia; that the plaintiffs herein replevied said property, and returned it to the defendant Abeytia, but afterward dismissed his suit, whereupon the ewes were returned to the sheriff, who sold them upon the attachment and judgment against the said Abeytia; and that such disposal of the ewes constituted "inevitable accident,"

whereby it was impossible for the defendants to return said ewes. The plaintiffs demurred to the second and third pleas upon the following grounds: As to the second plea, because (1) it attempts to set up a substituted, unexecuted parol agreement in discharge of the covenant sued on; (2) attempts to set up by way of defense an accord without satisfaction; (3) there was no consideration for the agreement set up in discharge thereof. As to the third plea, because the institution and commencement of the action of replevin, and the dismissal thereof, was, and is, in law, no defense to' defendants' breach of covenant set forth in the declaration. The demurrers to these pleas were sustained, to which ruling the defendants excepted. The case was then tried by the court on the issues joined, and judgment given for the plaintiffs. The court found that there had been a partial performance by delivering one thousand, three hundred and sixty-seven ewes, and the payment of rental up to June 5, 1885, except the sum of $244.80; that the balance of the contract was unperformed; and the plaintiffs were entitled to recover the value of two thousand, seven hundred and twenty ewes at $1.50 a head, with rent for two thousand, seven hundred and twenty sheep from June 5, 1885, to the date of the commencement of this action, on August 17, 1886. The defendant filed a motion for a new trial, which was overruled, whereupon he took an appeal, and makes fourteen assignments of error. These assignments are interdependent, and in our view of the case a consideration of three or four disposes of all.

The first, and most material, one is that there was error in sustaining plaintiffs' demurrer to defendants' second plea. It will be necessary to set out the material portions of that plea in order that it may fully appear whether or no there was error. After pleading full payment of rent, a partial delivery of the sheep,

and a meeting for the purpose of delivering and receiving the balance of the sheep, the plea continues: "And the defendants further aver that then and there the said defendant Lorenzo A. Abeytia entered into a new contract and agreement with the said plaintiffs, by which he (the said Lorenzo A. Abeytia) agreed to hold the balance of said ewes under a new contract between the said L. A. Abeytia alone and the said plaintiffs, and in accordance with the terms of which he (the said L. A. Abeytia) was to pay twenty cents per head annual rental for the said ewes, and that the said new contract was then and there executed by the said defendant continuing to hold the said ewes thereunder; and that it was then and there agreed by and between the said defendant L. A. Abeytia and the said plaintiffs, in consideration of the said defendant L. A. Abeytia agreeing to hold and continuing to hold the said ewes under said new contract, that the said new contract and agreement should be substituted for the old contract; and the said plaintiffs then and there entered into the said new contract, and agreed that in consideration of the making of said new contract by the said defendant L. A. Abeytia, and the holding of the ewes thereunder as aforesaid, that the same should be a full and complete satisfaction of the contract mentioned in plaintiffs' declaration upon which this suit is brought." It will be noticed that there is no allegation that the balance of the sheep were ever delivered or tendered according to the terms of the original contract. The inference, therefore, is that the defendants failed so to do, and that there was a breach of the contract. This inference is corroborated by the allegations of the plea, which says that the new contract was "a full and complete satisfaction" of the original contract. If there had been a delivery, there would have been no need of a satisfaction; the delivery would have been a satisfaction. If there was no delivery, then

there certainly was a breach. As, then, this new
agreement is pleaded as a satisfaction for the original
contract, it is certain that it is done so as an accord
and satisfaction. Has it set out a good accord and
satisfaction?

The appellant argues that the facts alleged in the
plea make out a case of performance and satisfaction,
or, rather, an abandonment or rescission, not a modi-
fication, of the original contract. That it was not a
modification seems plain, for the contract pleaded had
as one of the parties only one of the defendants, and
there is nothing said as to terms except as to hold-
ing the sheep, and paying twenty cents per head
instead of twenty-five cents, and there is nothing show-
ing an intention to modify the original contract.
Neither is it an abandonment or rescission, as held in
the cited case of Green v. Wells, 2 Cal. 584. In that
case the plaintiffs informed the defendant that they
were unable to fulfill their contract, and that they
would forfeit the money due them if the defendants
would consent to the abandonment of the contract.
This the defendants agreed to do. In the case before
us a different state of facts exists. The defendants
here could have fulfilled their contact. There was
nothing due from plaintiffs to these defendants upon
which to predicate a consideration for abandoning the
original contract. It seems to have been entirely one-
sided, and that entirely for this defendant. That the
plea makes out a performance and satisfaction is true,
if by that is meant an accord and satisfaction. If any
other is intended, it is so finely drawn that the writer
is unable to grasp it. The early cases upon accord
and satisfaction held to the doctrine that a contract
made under seal could not be satisfied by a parol con-
tract. This has, in a measure, been modified by the
later cases where the new agreement was executed.
In Smith's Leading Cases, in the valuable notes to the

case of Cumber v. Wane, 1 Strange, 426, upon page 647 of volume 1 [8 Ed.], it is laid down "that a parol accord and satisfaction can not discharge the instrument or obligation, but may discharge the money due upon it." If this had been a suit for the rental simply, the plea may have been good; but it would seem that it could not be good in attempting to discharge the instrument itself. There is another serious objection to this plea, and that is that it attempts to discharge a larger obligation by a smaller, without in any way placing the plaintiffs in a better position. The relation would seem to be the same as to the plaintiffs, except that they were to have only twenty cents per head for the sheep instead of twenty-five cents, and only one bound to pay it instead of three, and with no other terms as to the contract except the agreement to hold the sheep and pay for their use, but when, where or how is not stated. Upon page 648, volume 1, Smith, Leading Cases, we have the result of the cases summarized in the following language: "It seems to be reasonably well settled by the American cases that the giving and accepting of a smaller sum of money in payment or satisfaction of a larger one due is not a valid discharge, and can not be pleaded either as payment or as accord and satisfaction." See cases there cited. We think that this new contract was not executed.

The plaintiffs plead it as executed by the defendant Abeytia "continuing to hold the said ewes thereunder;" but there is no allegation that the plaintiffs have ever received anything for said sheep under the new contract, nor that the plaintiffs ever had the sheep in their hands, and passed them into the control of the defendants under the new contract. In order to make a good satisfaction for a contract to be set aside, the new contract should have in it an executed consideration of value to the obligee. There is none whatever

in this plea shown. There is only a promise to pay twenty cents per head. The obligor has done nothing new; has not changed his position at all; he still holds the sheep. While the manner in which the plea is drawn might at first blush seem to set forth a good defense, yet upon a careful analysis it is apparent that it is fatally defective, and that the ruling sustaining the demurrer was correct.

The second error assigned was that the court erred in sustaining the demurrer to the defendants' plea that the sheep were taken from the defendant Abeytia upon an attachment against him; and that after the plaintiffs had replevied them, and returned them to the defendants, he afterward dismissed the replevin suit, and allowed them to be sold by the sheriff. We are unable to see any error herein. Possibly, the plaintiffs may have at first thought that he would save his property in the sheep by asserting his prior right to them, and afterward concluded that, as the defendants held them under a contract, they might protect his right, and that he would look to them for satisfaction, as he had a perfect right to do. It can not be urged that the contract was at an end by the taking under the replevin, for the plaintiffs immediately passed them into the hands of the defendants, and there was never any agreement that the contract should be terminated by such delivery as contemplated by the contract. Then, too, the evidence conclusively shows that the said replevin suit was instituted for and at the request of the defendants. The sheriff sold said ewes under the attachment and judgment against the defendant Abeytia. The court therefore found that the value of the sheep, under the contract, was $1.50 per head. To this finding the defendants except and urge that this is "accident," under the terms of the contract, and their value should be $1.25 per head. It seems to us that "accident" is any casualty which could not be

*Margin note: ATTACHMENT: replevin: sale: inevitable accident.*

prevented by ordinary care and diligence. It can not be presumed that parties will enter into contracts, and place property in another's possession, with a price thereon varying as to contingency, and intend that the lesser sum is to cover the obligor's own fault. The smaller sum was to protect him against accidents over which he practically had no control; as, for instance, disease. The larger sum was to protect the plaintiffs against the carelessness or fraud of the defendant. He could have saved the sheep by paying his debts. Instead, he saw fit to pay his debts with another person's property. This was clearly disposing of them in "any other manner" than by accident. The court's finding was correct.

The last error which we think material to consider is the eleventh, in which the court refused to declare, as a matter of law, that if a breach of the contract occurred on September 25, 1895, thereafter plaintiffs were not entitled to recover the rent contracted for, but only six per cent interest upon the money due at that time. That the rule here contended for is correct under certain circumstances is undoubtedly true, but whether or not it is applicable here depends upon the terms of the contract, if there are any, governing it. It appears that a value was placed upon the sheep, and the contract specifies that "the said property is to be considered the same as money received." When, then, a breach of the contract occurred, immediately a cause of action arose, and then plaintiffs could have sued thereon, and recovered either the ewes or their value in money. At the time of the breach the plaintiffs could have had the ewes, for they were in the possession of the defendants; or, if they failed to deliver them, then their value, at $1.50 per head. It rested entirely with the plaintiffs as to when they should begin their suit. Can it be contended that the plaintiffs may speculate upon their right of action? And yet, if

*LIABILITY for rent after breach: measure of damages.*

the contention of the counsel is correct, they may re-
fuse to institute suit for years, and then recover the
value of the sheep, and the rent agreed upon for those
years; while, if suit was instituted at once, the dam-
ages would be the value of the sheep.    The contract
was at an end at its breach; the value of the contract
then was a moneyed value; the damages for the use of
money would be the legal rate of interest.    We think,
therefore, that the court erred in refusing to declare
the law in this respect as asked by the defendant. ·
Judgment will therefore be given for $5,229.42 with in-
terest at six per cent,from October 5, 1888.    There was
an error of $502.35 in the judgment.

O'BRIEN, C. J., and FREEMAN, McFIE, and LEE,
JJ., concur.