**W. Rodney DeVILLIERS and Orco Corporation, Appellants,**

**v.**

**ATLAS CORPORATION, Appellee.**

**No. 8400.**

United States Court of Appeals Tenth Circuit.

May 9, 1966.

Rehearing Denied June 14, 1966.

W. Rodney DeVilliers, Albuquerque, N. M., pro se.

John A. Guzzetta, New York City (Simpson, Thacher & Bartlett, H. Robert Limmer, New York City, and Grantham, Spann & Sanchez, Albuquerque, N. M., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

After trial to the court without a jury, appellee-plaintiff Atlas Corporation recovered judgment for $441,500 against appellant-defendant DeVilliers and for $11,048.62 against appellant-defendant Orco Corporation. The claims against DeVilliers concerned withdrawal of funds by him from the assets of a corporation of which he was an executive officer. The claim against Orco was for overcharges for transportation of uranium ore by truck. Jurisdiction is based on diversity.

■ DeVilliers appeared pro se and also represented Orco, a corporation which was owned and controlled by him and of which he was the chief officer. The status of DeVilliers as a lawyer is uncertain. He is not admitted in the Court of Appeals for the Tenth Circuit. We repeat our holding in Flora Construction Co. v. Fireman's Fund Ins. Co., 10 Cir., 307 F.2d 413, 414, certiorari denied 371 U.S. 950, 83 S.Ct. 505, 9 L.Ed.2d 499, that a corporation can appear in a court of record only by an attorney at law. Nevertheless we have examined the unnecessarily long and complicated record to determine the right of both DeVilliers and Orco.

■ The evidence of the parties was in sharp conflict. The trial court disbelieved DeVilliers. Determination of the credibility of witnesses is a function of the trial court—not of the appellate court. We are convinced that, with one hereinafter noted exception, substantial evidence sustains all the findings of the trial court and we accept them.

Atlas Corporation is a successor by merger to Hidden Splendor Mining Company which was successor by prior merger to Rio de Oro Uranium Mines, Inc. DeVilliers was president and director of Rio from its incorporation in 1955 until March, 1957, when Hidden Splendor acquired sufficient Rio stock to give it control of that company. DeVilliers then became senior vice-president and chief executive officer of Rio. In October, 1959, Rio was merged with Hidden Splendor and DeVilliers was made senior vice-president of Hidden Splendor and chief executive officer of the operations that had previously been carried on by Rio. The merger of Hidden Splendor with Atlas occurred after the events with which we are concerned.

■ Between August 19, 1958, and October 9, 1959, DeVilliers, while acting as chief executive officer of Rio, caused ten checks totaling $375,000 to be drawn on Rio and to be made payable to his order. He admittedly applied the proceeds for his own benefit. DeVilliers claims that the checks were in payment of an interest owned by him in a property known as the San Mateo Dome. Whatever his title to this property may have been, DeVilliers produced no document transferring that title to either Rio or Hidden Splendor. No corporate authorization for the action appears in the minutes of either company. The trial court found on competent and substantial evidence that no "corporate authorization, approval, ratification or any justification whatever, either formal or informal," was given for the issuance of the checks and that this situation was known to DeVilliers when he caused the checks to be drawn and applied the proceeds for his own purposes. Neither company received any consideration for the $375,000 and neither knew or had reason to know of the issuance of the checks until the fact was disclosed by a January 30, 1960, letter from an independent accountant engaged in auditing the books and records of Rio.

■ When Hidden Splendor acquired the Rio stock, the agreement for acquisition executed by DeVilliers and others represented that Rio had no liabilities or obligations to its officers for any amounts of cash "whether for compensation or otherwise" except an expense account owing to DeVilliers. The agreement also provided for the resignation of the Rio officers and directors. DeVilliers was then rehired by Rio at a yearly salary of $18,000. At various times thereafter DeVilliers, without corporate authority approval or ratification, caused his salary to be raised first to $24,000 yearly and then to $30,000 yearly with each increase retroactive to the organization of Rio in April, 1955. The retroactive increases were first brought to light by the aforementioned auditor's letter of January 30, 1960.

On March 11, 1960, DeVilliers met with officials of Hidden Splendor and Atlas. He did not deny the issuance and receipt of the checks for $375,000 or the receipt of the retroactive salary increases. An agreement was prepared and executed. After reciting "differences and misunderstandings" between DeVilliers

and Hidden Splendor as described in a February 23, 1960, letter from the auditors and the resolution of those differences on the basis therein set forth, it stated that DeVilliers and Hidden Splendor agreed that no sale of the San Mateo Dome interest had been made by DeVilliers to Hidden Splendor or Rio and that DeVilliers shall pay to Hidden Splendor $440,000 to be evidenced by a note. Payment of the note was to be secured by certain collateral to be furnished by DeVilliers within 10 days. The collateral was never supplied.

On April 5, 1960, DeVilliers wrote Floyd B. Odlum, the chief executive officer of Hidden Splendor who had signed the March 11 agreement on its behalf, saying in effect that Odlum had agreed to furnish the funds necessary to meet the note and that if the funds were not made available "it would be necessary that I repudiate and disaffirm the note and security agreement of March 11, 1960." On April 12, 1960, Odlum replied that the assertion relating to the provision of funds was "unbelievable" and that he understood that DeVilliers was "repudiating and disaffirming the promissory note and agreement of March 1, 1960." From our reading of the record we agree with Mr. Odlum's characterization of DeVilliers' position as "unbelievable."

■■ The district court held that the March 11, 1960, agreement was an executory accord which DeVilliers did not satisfy. We concur. An executory accord is "an agreement for the future discharge of an existing claim by a substituted performance."[1] When the executory contract is fully performed as agreed, there is an accord and satisfaction and the previously existing claim is discharged.[2] For DeVilliers to maintain his position he must show that the March 11 agreement was intended to discharge the prior obligation and take its place.[3] If the debtor breaks the executory accord, the creditor has the alternative of enforcing the original duty or the subsequent contract.[4]

■ DeVilliers cites many authorities on the effect of a completed settlement. They are not pertinent. We have here no completed settlement. The March 11 agreement required that the note be secured within 10 days. Instead of posting the security DeVilliers repudiated the agreement. The trial court correctly held that the accord was executory and that the prior claims could be maintained.

The record sustains the findings that the San Mateo Dome and retroactive salary payments were made without corporate authorization, approval, or ratification. The claim of estoppel is so frivolous as to justify no discussion. The explanations of DeVilliers extend our credulity far beyond the realm of reason. In simple terms DeVilliers, in violation of the obligations which he owed to Hidden Splendor and Rio, took corporate funds and converted them to his own use. The taking is admitted and the justification is unbelievable.

■ This would dispose of the San Mateo Dome and salary issues except for one thing. The trial court held that recovery could be had only for the retroactive salary payments. In its findings the trial court fixed the amount thereof at $66,500. In a Rule 60, F.R.Civ.P., motion filed after judgment DeVilliers claimed that this amount was excessive. From the briefs of the parties and the record we are unable to determine whether this is so. In any event the court in ruling on the motion said that the correct amount was $40,500 but that it could not make the change because the prior filing of a notice of appeal had deprived the

1. 6 Corbin on Contracts, § 1268, p. 71.

2. Op. cit., § 1276, p. 115.

3. See Lindberg v. Ferguson Trucking Co., 74 N.M. 246, 392 P.2d 586, 589, and Armijo v. Abeytia, 5 N.M. 533, 25 P. 777, 781.

4. Restatement, Contracts, § 417, p. 785. Corbin says (op. cit., § 1275) that: "Since an accord executory operates at best no more than as a suspension of the antecedent claim, a material breach of the accord lifts the suspension and makes the creditor's prior claim enforceable."

district court of jurisdiction. In the circumstances we accept that figure as the correct amount and will reduce the recovery on account of the retroactive salary payments accordingly.

■ DeVilliers, the principal stockholder and chief executive officer of appellant Orco, dominated the policies and operations of that company which was a common carrier by truck. During the period January 1, 1959, to September 26, 1959, Orco hauled uranium ore for Hidden Splendor and collected transportation charges of $34,858.84 in excess of the charges permissible under its tariffs filed with the New Mexico State Corporation Commission. The fact of such excess charges is not denied. Rather it is asserted by way of counterclaim that Hidden Splendor owed Orco more than the amount of the overcharges on account of services rendered in addition to the transportation of ore. The trial court correctly held that this claim was unsupported by proof. The basic lack is the absence of any agreement by Hidden Splendor to pay for more than ore transportation. In the circumstances no basis existed to sustain Orco's request for an accounting. In its second counterclaim Orco asserts the nonpayment of $23,810.22 due on account of ore transportation. This claim is not contested and the trial court correctly awarded the amount thereof as a set-off against the overcharges.

■ The counterclaims of DeVilliers, all of which were rejected by the trial court, require little comment. The first alleges failure of Hidden Splendor to pay agreed salary. On conflicting evidence the trial court held against DeVilliers. All we need say is that the credibility of DeVilliers was for determination by the trier of the facts. The second relates to the claim that salary was due DeVilliers for services as an officer of Mid-Continent Exploration Company, which was owned jointly by Hidden Splendor and Rio. Our comments relating to the first

counterclaim are applicable with the addition that Mid-Continent was a dormant company having no operations except the collection of payments due it.

■ The third counterclaim seeks recovery from Hidden Splendor of certain shares of Rio stock or of the value of such shares. The claim is based on certain rights given DeVilliers by Rio in November, 1955, and on the assignment by DeVilliers of certain shares of his Rio stock in payment of liabilities of Rio. The district court correctly decided that the claim was unsupported by proof. The February 21, 1957, agreement between the sellers of Rio stock to an agent for Hidden Splendor provided, as we have heretofore noted, that Rio had no obligations to its officers for "any sum or sums or any amount or amounts in cash or otherwise" except for a DeVilliers' expense account and that the right of DeVilliers to receive other shares than those mentioned in the agreement is cancelled.[5]

■ A statement of the fourth counterclaim is sufficient to destroy it. De-Villiers says that the March 11, 1960, agreement, heretofore determined to be an executory accord, constituted a rescission of the March 8, 1957, sale by DeVilliers to Hidden Splendor of over a million shares of Rio stock having a value of over one million dollars. We do not believe that the officers of Hidden Splendor by agreeing to accept a secured promissory note for $440,000 on account of money wrongfully taken by DeVilliers from Hidden Splendor intended to enrich DeVilliers by restoring to him stock of the mentioned value. The positive testimony of the Hidden Splendor officers to the contrary was rightfully accepted by the trial court.

The joint counterclaim of DeVilliers and Orco charges that the institution of the suit under consideration was without probable cause and was brought for the specific purpose of injuring the business and credit reputation of DeVilliers and Orco and to benefit Hidden Splendor in

5. The February 21, 1957, agreement was superseded by an agreement of March 8, 1957, which incorporated the provisions here mentioned.

other litigation. The complete answer is that the trial court found, and we agree, that the case has merit and that Hidden Splendor is entitled to judgment.

The final argument is that the judgment must fall because the substitution of Atlas as plaintiff in the place of Hidden Splendor was not made within the time permitted by Rule 25(a) (1), F.R.Civ.P. This rule was amended in 1963. Prior to the amendment the rule was held applicable only to natural persons and not to corporations.[6] The same principle applies to the amendment. The transfer of interest from one corporation to another with which the first is merged calls into play Rule 25(c). We hold that the substitution was proper.

The judgment is affirmed except that the recovery on account of retroactive salary should be $40,500 instead of $66,-500. This means that the total judgment against DeVilliers shall be reduced by the amount of such difference. Costs are awarded to the appellee.

---

6. See Feener Business Schools v. Speed-writing Pub. Co., 1 Cir., 249 F.2d 609, 612, certiorari denied 352 U.S. 942, 77 S. Ct. 264, 1 L.Ed.2d 238, and 2 Barron and Holtzoff, § 621, p. 420.