ED J. AND MARTHA JO HAGEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hagen v. Commissioner
Docket No. 7700-76
United States Tax Court
T.C. Memo 1993-646; 1993 Tax Ct. Memo LEXIS 656; 66 T.C.M. (CCH) 1903; December 30, 1993, Decided *656 For petitioners: Layton M. Perry. For respondent: Thomas J. Miller. DAWSON
DAWSON
SUPPLEMENTAL MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel pursuant to section 7443A(b)(4), I.R.C. 1986, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: On August 31, 1989, this Court issued its opinion in this case, Hagen v. Commissioner, T.C. Memo. 1989-473. On May 22, 1990, petitioner filed a Notice of Appeal to the United States Court of Appeals for the Tenth Circuit (the Court of Appeals). [2] On December 26, 1991, the Court of Appeals filed an Order and Judgment wherein this case was affirmed in part, *657 reversed in part, and remanded for further proceedings without published opinion 951 F.2d. 1258. [3] We have before us now for recalculation four of the original 56 issues.
*658 We will set forth herein only those facts that are pertinent to the issues we must decide. Ed J. Hagen (hereinafter sometimes referred to as petitioner) was engaged in the business of being a registered securities broker-dealer. Petitioner operated as a sole proprietor under the name of Hagen Investments during the tax years 1964-66. He incorporated the business as Hagen Investments, Inc., in 1967. Respondent determined that petitioners' books and records for the years 1964-66 were incomplete and unreliable. Respondent used the bank deposits method to determine that petitioners failed to report gross income during those years from Hagen Investments. Respondent compiled deposits made to some 21 of petitioners' bank accounts during 1964-66, eliminating all deposits determined to be gifts, transfers between accounts, loan proceeds, and other nontaxable receipts. Similarly, respondent adjusted expenses reported on petitioners' 1964-66 returns, based on respondent's analysis of petitioners' bank accounts. Respondent further determined numerous adjustments with respect to petitioners' individual returns filed for the years 1968-71. Because petitioners' records were not complete, *659 respondent employed third party records and indirect methods to make the adjustments. Petitioners' income during these years was adjusted to include as constructive dividends a vast variety of disallowed "business" expenses claimed by Hagen Investments, Inc.
In Hagen v. Commissioner, T.C. Memo. 1989-473, this Court sustained the majority of respondent's determinations. Petitioners appealed many of respondent's determinations. The Court of Appeals affirmed our findings and rejected all of petitioners' arguments with the exception of the four issues set out below. Cost of Goods Sold
Petitioners challenge the reasonableness of the method used by respondent to reconstruct the income of the securities broker-dealer business in the years 1964-66. On appeal, petitioners contended that the bank deposits method is unreliable when applied to the securities broker-dealer business. Specifically, petitioners argued that respondent incorrectly postponed accounting for short sales, [4] and used opening and closing inventory figures to determine the cost of goods sold without considering that the inventories had been marked to market in each month. *660 Petitioners were calendar-year taxpayers. Petitioner valued Hagen Investments' inventories for 1963 and 1964 at cost, and valued those inventories for 1965 and 1966 at the lower of cost or market. Petitioner did not obtain respondent's permission to change his method of accounting as required under section 446(e). Respondent determined that inventories of securities were a material income-producing factor in petitioner's business and therefore petitioner was required to use the accrual method of accounting. Sec. 1.471-1, Income Tax Regs.; Rev. Rul. 74-226, 1974-1 C.B. 119. In reconstructing petitioners' income, respondent adjusted the income and expenses of the broker-dealer business to reflect proper accounting on the accrual method. Respondent adopted Hagen Investments' closing inventory figures for 1963-65 as the opening inventory figures for 1964-66, respectively, and adjusted the figures for 1965 to reflect the actual cost of the inventory. Respondent then added to the opening inventory amount for each year, the cost of inventory purchases made during the year, derived from respondent's check classifications, to arrive at the *661 cost of goods available for sale for each year during the period 1964-66. From the cost of goods available for sale, respondent subtracted the closing inventory figures for each year obtained from financial statements and audit reports prepared for petitioner by certified public accountants (C.P.A.'s), again adjusting them where necessary to reflect the actual cost of the inventory. Respondent excluded from the gross receipts of any given year, those short sales that were not covered by yearend. Short sales were accounted for in the year in which they were completed (when the stock was delivered to the buyer). Petitioners argued on appeal that respondent's method was inconsistent because it used opening and closing inventory figures that had already been adjusted under the U.S. Securities and Exchange Commission regulations but then added and subtracted from those adjusted figures the actual cost of securities purchased during a year. In their brief on appeal, petitioners set forth an example in an attempt to illustrate the inconsistency in respondent's method. If Hagen Investments owned 1000 shares of Leeway at the end of 1965 at an $ 11.00 bid price, we would show that *662 as an $ 11,000 inventory position. We also assume that this stock was bought at $ 13.00 per share. In this instance respondent would show $ 2,000.00 more income in 1965 than petitioner does. [Because the Commissioner changed the inventory to actual cost.] In January 1966 the 1000 Leeway are sold at 14. Petitioners will show a $ 3,000.00 profit over their adjusted base, which will contribute to their annual income for 1966. At the end of 1966 respondent shows the excess income he figured, following his method, but does not reduce by $ 2,000.00 the excess profit he figured for petitioner in 1966 which respondent has already included by anticipation in 1965 by disallowing the downward inventory adjustment. The same holds true for short positions, see transcript please.
In the brief on appeal, respondent addressed petitioners' arguments by stating that petitioners failed to appreciate that short sales are included once the transaction is completed. Thus, respondent answers, short sales are not excluded completely; rather, they are included in the next year's income figures when the sale is completed. The Court of Appeals held that respondent failed to address petitioners' arguments. *663 Although respondent's deficiency determinations are entitled to a presumption of correctness, Erickson v. Commissioner, 937 F.2d 1548, 1551 (10th Cir. 1991), affg. T.C. Memo. 1989-552, the Court of Appeals noted that this presumption evaporates if the determinations lack a rational basis, citing Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980). A reasonable foundation for respondent's assessment is necessary. Id. The Court of Appeals found that petitioners made a legitimate challenge to the reasonableness of respondent's method of reconstructing the income from the broker-dealer business. As respondent failed to adequately address the challenge in the brief on appeal, the Court of Appeals remanded the issue to this Court for further consideration, opining "If the Commissioner cannot adequately address Petitioners' arguments and establish a rational basis for the method he used to determine the cost of goods sold for the tax years 1964-1966, the Tax Court will have to recalculate the tax owed for those *664 years." Respondent determined that petitioners overstated Hagen Investments' cost of goods sold (COGS) in 1964 by $ 18,078.76, understated its COGS in 1965 by $ 41,570.77, and overstated its COGS in 1966 by $ 221,378.61. Respondent arrived at the COGS amounts by using petitioners' own financial statements and audit reports prepared for Hagen Investments by C.P.A.'s. Each inventory, opening and ending, was adjusted to reflect the actual cost of securities held by Hagen Investments. Under respondent's method, the securities held in Hagen Investments' trading accounts were consistently valued at their cost regardless of when the securities sales receipts were included in income. Respondent's method can be illustrated by charting out petitioners' example as follows: Taxable
Gross
Hagen Investments Net Income
Year
Receipts
Inventory Petr.
Resp.
1964
$ 13,000 L stock  1965
P changes to market  ($ 2,000)
$ 11,000  deduction
R values at cost  -0-
$ 13,000  1966
$ 14,000
P: $ 11,000  $ 3,000 R: $ 13,000  $ 1,000
$ 1,000 $ 1,000
The first problem with petitioners' example is their incorrect assertion that respondent's method *665 shows $ 2,000 more income for 1965. Respondent only adjusted Hagen Investments' inventory figures in 1965 to reflect actual cost as part of respondent's method for determining COGS. Furthermore, worked out to its logical conclusion, the example shows that respondent's method reflects the same net gain on the sale as petitioners assert they would have shown. Under respondent's method, petitioners' net income for 1966 would be $ 1,000 ($ 14,000 gross receipts less $ 13,000 COGS). The gain is less than the $ 3,000 gain petitioners would have reported in 1966 under their approach ($ 14,000 proceeds less $ 11,000 adjusted base). The $ 2,000 difference results from petitioners' improper deduction claimed in 1965 for valuing the Leeway stock at market, which was then the lower of cost or market. The net result is that under respondent's method, the COGS of the Leeway stock is its cost, regardless of when it is sold or the fluctuation in its market price. Petitioners' gain on the sale of Leeway stock as determined under respondent's method would be the same in any year because respondent consistently valued at cost all securities held or purchased by Hagen Investments each year. Petitioners *666 assert that the same "inconsistency" in respondent's methodology applies to respondent's treatment of short sales. Petitioners challenge that not reporting short sales until closed while valuing the inventory at cost creates an aberration, which petitioners do not explain. Using the facts from petitioners' example, we will apply respondent's method to a short sale. Assume that in 1965 petitioner made a contract for a short sale of 1000 shares of Leeway for $ 13,000 to be delivered in January 1966. By definition of short sale, petitioner does not yet own Leeway stock and therefore does not have any inventory or COGS in 1965. Under respondent's method, petitioners do not include any receipts in income in 1965. Under petitioners' approach, however, Hagen Investments would report the $ 13,000 receipts from the short sale made in 1965. If in January 1966 Hagen Investments is forced to buy 1000 shares of Leeway at $ 14 per share to cover its short position, respondent would include $ 13,000 in gross receipts for the short sale in the year of completion, 1966, and determine COGS at $ 14,000, thus arriving at a net loss of $ 1,000. Whether petitioners have marked Hagen Investments' *667 inventory to market and in what year short sales proceeds are included, are both irrelevant factors under respondent's method. As long as respondent has consistently included short sale proceeds in the year covered or completed, and valued all securities purchased or held in inventory at cost, which in our view respondent has done, the method reflects income without distortion or inconsistency. Home Office Expenses, Constructive Dividends, Ad Valorem Taxes
In Hagen v. Commissioner, T.C. Memo. 1989-473, we concluded that a major part of Hagen Investment, Inc.'s business was conducted from offices in petitioners' residence during the years in issue. Hagen Investments, Inc. was unable to establish the business purpose of many of the deductions it claimed for repairs, maintenance and utilities. As a result, the majority of the deductions were disallowed to Hagen Investments, Inc. and many of the expenses it paid during 1968-71 were treated as distributions to petitioners. Petitioners did not take any deduction on their tax returns for 1968-71 for the portion of their home used as an office. In reconstructing petitioners' taxable income for those *668 years, respondent included a deduction of $ 229.72 per year for home office expenses. In Hagen v. Commissioner, supra, this Court commented that the amount seemed low given the level of business activity carried on in petitioner's home. We nonetheless sustained respondent's determinations based on our conclusion that there was no reasonable basis for making an allocation of expenses in the record. Citing Rev. Rul. 62-180, 1962-2 C.B. 52, the Court of Appeals noted that the cost of repainting or repairing rooms used exclusively for business purposes would be fully deductible, and a pro rata portion of the cost of paying rent, utilities, taxes, or mortgage interest, and of painting the outside of the residence or repairing the roof would be deductible. The Court of Appeals found that this Court had sufficient evidence before it in the form of petitioner's testimony regarding the percentage of square footage used for business purposes from which we could reasonably allocate expenses relating to the business use of petitioners' residence. The issue was thus remanded to us to recalculate the home office expenses allowed to petitioner. *669 The total square footage of petitioners' home is 4,544 feet. From June 1, 1965, until October 1968, all of the ground floor of petitioners' home, 1820 square feet, was used for business purposes. The entire garage, 682 square feet, was also used for business purposes during the same period. The remaining two floors of the residence were used primarily for personal purposes although office phones extended to each floor. The parties now agree that 55 percent of petitioners' home was used as an office during the period June 1, 1965 through October 1968, when parts of the business operations were moved to another building. The business use of the residence thereafter dropped to 1820 square feet. The parties agree that 40 percent of petitioners' home was used as an office from October 1968 through the end of 1971. In spite of agreeing to a reasonable business use percentage, the parties disagree as to the categories of expenses to which the percentage should apply. As mentioned above, the Court of Appeals concluded that the costs of repair and maintenance of the office area itself should be deductible to petitioners, as well as a pro rata portion of the cost of paying rent, utilities, *670 taxes, or mortgage interest, and of any other repairs or maintenance made to the outside of the residence. Because Hagen Investments, Inc. paid for many, if not most of petitioners' expenses during 1968-71, we must again review the record to determine which of the disallowed expenses were treated as constructive dividends to petitioners in Hagen v. Commissioner, T.C. Memo. 1989-473. We rely on our findings of facts and holdings there to decide the amounts that should be included in the category of petitioners' deductible home office expenditures. We address first those expenses which, for various reasons, should not be included in petitioners' home office expenditures category. On appeal, petitioner disputed the amount of constructive dividends respondent determined petitioner received from Hagen Investments, Inc. and Capitol Car Care, Inc. during 1968-71. Petitioners argued that the expenditures with which they were taxed were legitimate corporate expenses. Because Hagen Investments, Inc. was not a party to the appeal, the propriety of disallowing the expense deductions is not at issue. However, the Court of Appeals stated that whether the expenditures *671 were legitimate business expenses has some bearing on whether they were made primarily for petitioners' benefit. After reviewing all the expenditures that this Court treated as constructive dividends, the Court of Appeals stated, "We conclude that the Tax Court did not err in treating those expenditures as constructive dividends with the exception of a few items in the category of maintenance and repair discussed below." (Emphasis added.) Both Petitioners testified that all the rooms in the basement of their residence, as well as a three-room garage apartment, were used as office space for Hagen Investments, Inc. and the other businesses in which Petitioners were involved. Rec. Vol. V at 1741-42; Rec. Vol. IV at 1257-58. This testimony was corroborated by Fern Morris, who was the bookkeeper for a number of years. Rec. Vol. V at 1754-55, 1759-60. Several of the invoices Petitioners introduced into evidence specifically indicated that they were for repairs, maintenance, or materials for the office space. These are as follows: 1. May 15, 1968 contract with J.W. Abbott (with back up invoices for materials) to "paint outside trim 2 coats in an under breezeway and garage, *672 calk and glaze where necessary also sand and remove loose paint where necessary," which also provided that the job was to be done at the rate of $ 4.00 per hour per man plus material plus 10% at contractor's cost, not to exceed $ 1050.00. Rec. Vol. XVII, Ex. 160. 2. May 24, 1968 invoice from Enlow Plumbing for $ 142.25 to check for water leak in basement, repair closet tank, install new shower valve, and connect dryer. Id. at Ex. 164. 3. June 17, 1968 invoice from Wolfenbarger Electric Co. for $ 15.30 for a service call on lighting fixture, which listed the job address as "office." Id. at Ex. 162. 4. June 25, 1968 invoice from The Hessemer Co. for service on two air conditioners, separately designated as the office unit and the house unit. Parts totalling $ 3.00 were installed on each of the two units and total labor on the units was $ 15.50. The total bill was $ 22.68 with tax. Id.
5. November 12, 1968 invoice from Enlow Plumbing for $ 43.67 to assemble and connect fireplace heater and rerun piping in downstairs fireplace, as well as clear tub drain and adjust central heating burners. Id. at Ex. 164. Martha Jo Hagen testified that the only fireplace *673 in the house was in the office. Rec. Vol. V at 1749. 6. November 20, 1968 invoice from Lillian Strickler for $ 49.85 for a spark arrester (fireplace screen). Rec. Vol. XVII, Ex. 167. 7. January 20, 1969 invoice from R.K. Black, Inc. ("Authorized 3M Brand Business Products Center") for $ 38.63. The invoice was addressed to Hagen Investments, 3022 N.W. Expressway, May-Ex Bldg., Room 301, Oklahoma City, Oklahoma, and described the work done as "cleaned and serviced machine," "replaced parts listed," "made adjustment for temp.," and "cleaned and waxed cover." The parts listed were 28 lamps, 1 belt, and 1 platen pad. Id. at Ex. 168. Martha Jo Hagen testified that this invoice was for service on the copy machine, Rec. Vol. V. at 1750-51, and the evidence showed that some of the offices of Hagen Investments, Inc. moved to the May-Ex building in 1968, Rec. Vol. IV at 1258; Rec. Vol. V at 1760. To the extent that the materials and services listed in the invoices were for the business premises and business equipment, the corporation's payment for those materials and services was not primarily for Petitioner's personal benefit. Nonetheless, the Commissioner treated all the payments *674 as constructive dividends to Petitioners. Rec. Vol. XI, Ex. LL at 10, 11, 12. Rather than approving the Commissioner's determination with respect to these items, the Tax Court should have applied the Cohan[5] rule and allowed an appropriate amount as a business expense, with a concomitant reduction in the amount treated as a constructive dividend to Petitioners. On remand, the Tax Court should recalculate the amount of constructive dividends attributed to Petitioners as income. [Emphasis added.]
Respondent has conceded the seven items listed above in full. Therefore the amount of constructive dividends attributed to petitioners as income shall be reduced by $ 1,362.38. As Hagen Investments, Inc., paid for the repairs, these amounts should not be included in the category of petitioners' home office expenses. Repair and maintenance bills for petitioners' residence paid for by Hagen Investments, Inc. but charged to petitioners *675 as constructive dividends are as follows: $ 5,984.75 in 1968, $ 2,681.70 in 1969, $ 649.15 in 1970, and $ 145.06 in 1971. To the extent that these amounts do not include any of the seven items listed above, petitioners are entitled to a home office expense deduction based on the pro rata allocation set out above. Hagen Investments, Inc. made all mortgage payments relating to petitioners' residence, including principal, interest, insurance, and property taxes. Respondent treated these payments as constructive dividends to petitioners and allowed petitioners deductions for the interest on the mortgage. Therefore, mortgage interest expense has already been allowed to petitioners and should not be subject to a pro rata allocation for home office purposes. Respondent has conceded that petitioners should have been but were not allowed a deduction for the ad valorem taxes on their property for 1968-71. By order of this Court dated November 18, 1992, predicated on a stipulation filed by the parties, the amounts expended for ad valorem taxes were allowed as deductions to petitioners. As they are already deductible under section 164, these amounts should not be included in the category *676 of petitioners' home office expenses. Petitioners paid $ 63,750 for their home in 1965. Depreciating the cost over a 25-year period on a straight line basis would result in an annual depreciation deduction of $ 2,550. Petitioners are entitled to deduct a pro rata portion of this amount, consistent with the foregoing, as part of their home office expense. Hagen Investments, Inc. paid for homeowner's insurance on petitioners' residence as follows: $ 2,187 in 1968, $ 1,933 in 1970, and $ 856 in 1971. The 1970 amount was not treated as a constructive dividend distribution to petitioners, and therefore is not considered to be part of petitioners' home office expenditures. The other amounts, however, are subject to the home office expense allocation. Hagen Investments, Inc. paid petitioners' utilities as follows: $ 1,572.83 in 1968, $ 1,820.84 in 1969, $ 1,217.57 in 1970, and $ 752.94 in 1971. These payments for utilities were held to be constructive dividends to petitioner. A pro rata portion of these amounts is deductible by petitioners as home office expenses. Petitioners raise many more issues in their brief, all of which are well beyond the scope of the remand. We, therefore, *677 need not and do not address them. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. Section references are to the Internal Revenue Code in effect for the years in issue unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner Ed Hagen filed a pro se Notice of Appeal from the Tax Court's decision purportedly on behalf of himself, his spouse, Martha Jo Hagen, and Hagen Investments, Inc. The Court of Appeals permitted the appeal to be maintained by both individual petitioners pro se, but dismissed the appeal as to the corporation because it can appear only through counsel. DeVilliers v. Atlas Corp., 360 F.2d 292, 294↩ (10th Cir. 1966). The decision in the corporate case has been final for 2 years.
3. While the text of the appellate Order and Judgment is available in several databases, the Court of Appeals has stated: "This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata or collateral estoppel." Hagen v. Commissioner↩, 92-1 USTC par 50,030 n.4 (10th Cir. 1991).
4. As the phrase indicates, a short sale is a contract for the sale of shares which the seller does not own or the certificates for which are not within the seller's control so as to be available for delivery at the time delivery is to be made. Provost v. United States, 269 U.S. 443, 450 (1926). Gains or losses resulting from short sales are determined when the sale is closed; i.e., at the time the stock is delivered. Sec. 1.1233-1(a)(1), Income Tax Regs.↩
5. Cohan v. Commissioner, 39 F.2d 540↩ (2d Cir. 1930).